# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00287-CV

**Appellant, Sheryl Michels// Cross-Appellant, Clifford Zeifman**

**v.**

**Appellee, Clifford Zeifman// Cross-Appellees, Sheryl Michels, John Barrett, Karl E. Hays, Law Offices of John Barrett, Becky Beaver, and the Law Office of Becky Beaver**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
NO. D-1-GN-07-004188, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Clifford Zeifman brought suit against his ex-wife, Sheryl Michels, and her divorce counsel, John Barrett, Karl E. Hays, the Law Offices of John Barrett, Becky Beaver, and the Law Office of Becky Beaver (collectively, the "Attorney Appellees"),[1] alleging causes of action for frivolous filing, fraud, negligence, malicious prosecution, abuse of process, fraud by nondisclosure, and conspiracy. The trial court granted summary judgment in favor of Michels and the Attorney Appellees, dismissing all of Zeifman's claims, but dismissing the malicious prosecution claim without prejudice. Michels appeals, arguing that the claim of malicious prosecution should have been dismissed with prejudice, while Zeifman cross-appeals to assert that the trial court erred in granting summary judgment in favor of Michels and the Attorney Appellees. We reverse the portion

---

[1] The Court notes that as a technical matter, the Attorney Appellees are actually cross-appellees.

of the trial court's order dismissing the malicious prosecution claim without prejudice and render judgment that it be dismissed with prejudice. We affirm the trial court's order with respect to all other claims.

## BACKGROUND

Michels and Zeifman divorced in 1998, signing an agreed divorce decree that included a provision governing which elementary school their two children would attend. In 2004, Michels filed a petition to modify the parent-child relationship, asking the court to modify the decree and award her the exclusive right to make educational decisions regarding one of the children, referred to herein as A.A. The trial court granted Michels's request and modified the decree. Michels then withdrew A.A. from Bryker Woods Elementary, a school in the Austin Independent School District (AISD), and enrolled her in private school at St. Andrew's Episcopal School. Zeifman appealed the trial court's order, and this Court reversed, holding that the trial court had abused its discretion in modifying the agreed divorce decree to give Michels sole power to make educational decisions on behalf of A.A. *See Zeifman v. Michels*, 212 S.W.3d 582, 596 (Tex. App.—Austin 2006, pet. denied).

After this Court's opinion was released but before the mandate issued, Michels sued AISD seeking injunctive relief to prevent the district from permitting Zeifman to enroll A.A. at Bryker Woods or any other AISD school as the 2006 school year began. Michels asserted that Zeifman planned to enroll A.A. in Bryker Woods in violation of the trial court's order modifying the divorce decree and a Travis County District Court standing order governing family law cases. Michels did not name Zeifman as a party to her suit seeking injunctive relief.

2

Upon discovering that Michels had obtained an ex parte temporary restraining order against AISD that would prevent him from enrolling A.A. in public school, Zeifman filed a petition in intervention, motion to dismiss, and motion for sanctions. The next business day, Michels filed a Rule 11 agreement with AISD, in which AISD agreed not to permit A.A. to be enrolled at or attend Bryker Woods without a final, non-appealable court order permitting her enrollment, in return for Michels's agreement to dismiss her suit for injunctive relief. Michels then filed a notice of non-suit and a motion to strike Zeifman's intervention. The trial court granted the motion to strike, dismissed Zeifman's motion to dismiss as moot, and denied Zeifman's motion for sanctions.

Zeifman appealed the trial court's decision to strike his intervention and deny his motion for sanctions. This Court reversed, holding that the trial court abused its discretion in striking Zeifman's intervention, and remanded for further proceedings on the issue of sanctions. *See Zeifman v. Michels*, 229 S.W.3d 460, 468 (Tex. App.—Austin 2007, pet. denied). To date, Zeifman has not pursued sanctions on remand, and no final judgment has been entered in that case.

In December 2007, Zeifman filed the present suit, bringing claims against Michels and the Attorney Appellees for frivolous filing, fraud, negligence, malicious prosecution, and abuse of process, based on Michels's suit for injunctive relief against AISD. Zeifman later amended his petition to add claims for fraud by nondisclosure and conspiracy. Michels and the Attorney Appellees moved for summary judgment. The trial court granted the motions for summary judgment and dismissed all claims, but dismissed the malicious prosecution claim without prejudice. Michels now appeals, contending that the malicious prosecution claim should have been dismissed with prejudice. Zeifman cross-appeals, arguing that the trial court erred in granting summary judgment in favor of Michels and the Attorney Appellees.

3

Summary judgments are reviewed de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a traditional motion for summary judgment, the movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003). Evidence favorable to the non-movant is taken as true and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.* at 215.

## DISCUSSION

*The Litigation Privilege*

We must first address the litigation privilege because it serves as an absolute bar to all of Zeifman's claims against the Attorney Appellees. Zeifman raises the issue of litigation privilege in his second issue on cross-appeal, arguing that the trial court erred in dismissing his claims against the Attorney Appellees on the basis of the litigation privilege.[2]

The litigation privilege protects an attorney from personal liability stemming from conduct that the "attorney engages in as part of the discharge of his duties in representing a party in a lawsuit." *Bradt v. West*, 892 S.W.2d 56, 72 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (op. on reh'g). "Stated differently, an attorney cannot be held liable to a third party for

---

[2] Because Michels's sole issue on appeal is that Zeifman's malicious prosecution claim should have been dismissed with prejudice, we will address her issue in our discussion of Zeifman's fifth issue on cross-appeal, in which he argues that the trial court erred in dismissing his malicious prosecution claim. Furthermore, we will address Zeifman's first issue on cross-appeal—that the trial court erred in granting summary judgment on later-pleaded claims not raised in the motions for summary judgment—after our discussion of the five claims raised in Zeifman's original petition.

conduct that requires 'the office, professional training, skill, and authority of an attorney.'" *Miller v. Stonehenge/FASA-Texas, JDC, L.P.*, 993 F. Supp. 461, 464 (N.D. Tex. 1998) (quoting *Taco Bell Corp. v. Cracken*, 939 F. Supp. 528, 532 (N.D. Tex. 1996)).  The litigation privilege focuses on the *type* of conduct engaged in by the attorney, rather than on whether the conduct was meritorious in the context of the underlying lawsuit. *Bradt*, 892 S.W.2d at 72 (stating that, for example, attorney could not be sued by opposing party for filing meritless or frivolous motions, "because making motions is conduct an attorney engages in as part of the discharge of his duties in representing a party in a lawsuit").  If an attorney's conduct violates his professional responsibility, the remedy is "public, not private." *Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 287 (Tex. App.—Fort Worth 1997, writ denied).  The purpose behind the litigation privilege is to protect an attorney's "right to interpose any defense or supposed defense and make use of any right in behalf of such client or clients as [the attorney] deem[s] proper and necessary, without making himself subject to liability in damages." *Morris v. Bailey*, 398 S.W.2d 946, 947 (Tex. Civ. App.—Austin 1966, writ ref'd n.r.e.).  Any other policy "would dilute the vigor with which Texas attorneys represent their clients, which would not be in the best interests of justice." *Bradt*, 892 S.W.2d at 72.

Zeifman argues that his claims against the Attorney Appellees are not barred by the litigation privilege because they arise from fraudulent conduct, which is "foreign to the duties of an attorney." *Poole v. Houston & T.C. Ry. Co.*, 58 Tex. 134, 137 (1882).  The litigation privilege is inapplicable if an attorney knowingly participates in fraudulent activities outside the scope of his legal representation of the client. *See Likover v. Sunflower Terrace II Ltd.*, 696 S.W.2d 468, 472 (Tex. App.—Houston [1st Dist.] 1985, no writ) (holding attorney liable for assisting client in perpetrating fraudulent business scheme involving sale of apartment complex); *Bourland v. State*,

528 S.W.2d 350, 357 (Tex. Civ. App.—Austin 1975, writ ref'd n.r.e.) (holding attorney liable for misrepresentations made to investors in client's fraudulent real estate scheme). In the present case, however, the complained-of actions taken by the Attorney Appellees are all actions that fall within the context of their duty to represent Michels in litigation—filing a lawsuit for injunctive relief, seeking and obtaining a temporary restraining order, and negotiating and filing a Rule 11 agreement. Such actions, which require the professional training, skill, and authority of an attorney, have been considered insufficient to form the basis of a fraud claim against an attorney by a non-client. *See Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 408 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (holding that litigation privilege bars fraud claim based on actions such as filing lawsuits and pleadings, providing legal advice, and awareness of settlement negotiations); *White v. Bayless*, 32 S.W.3d 271, 276 (Tex. App.—San Antonio 2000, pet. dism'd w.o.j.) (holding that claim of conspiracy to commit fraud was barred by litigation privilege because attorneys' actions of preparing and filing various pleadings were "actions taken as attorneys representing their client"). Furthermore, an attorney owes no duty to non-client parties in the adversarial context of litigation. *See McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 795 (Tex. 1999) ("[A] third party's reliance on an attorney's representation is not justified when the representation takes place in an adversarial context."); *see also Chu v. Hong*, 249 S.W.3d 441, 446 n.19 (Tex. 2008) (citing *McCamish* for proposition that "fraud actions cannot be brought against an opposing attorney in litigation as reliance in those circumstances is unreasonable"). As a result, we hold that the trial court did not err in dismissing Zeifman's claims against the Attorney Appellees because all such claims are barred by the litigation privilege. Zeifman's second issue is overruled.

6

*Frivolous Pleadings*

Having disposed of Zeifman's claims against the Attorney Appellees, we now address those issues on appeal relating to Zeifman's claims against Michels. In his third issue on cross-appeal, Zeifman argues that the trial court erred in dismissing his claim for filing frivolous pleadings under chapter 9 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 9.001-.014 (West 2002). Chapter 9 authorizes sanctions for the filing of groundless pleadings in bad faith or for an improper purpose, such as harassment or to cause unnecessary delay. *Id.* § 9.011.

Zeifman argues that chapter 9 allows a party to bring an independent cause of action, separate from the suit in which the pleadings were filed. Zeifman has not cited, nor have we found, any authority supporting this proposition. Instead, he points to section 9.012(a), which states that "[a]t the trial of the action or at any hearing inquiring into the facts and law of the action," the trial court may make a finding that sanctions are appropriate. *Id.* § 9.012(a). Zeifman argues that this language allows a party to pursue chapter 9 sanctions in a suit wholly separate from the one in which the objectionable pleadings were filed, provided that there is a "hearing inquiring into the facts and law of the action."

Our sister courts have held that where the civil practice and remedies code allows a "motion" for sanctions without explicitly creating an independent cause of action for sanctions, no such cause of action exists. *See Mantri v. Bergman*, 153 S.W.3d 715, 717-18 (Tex. App.—Dallas 2005, pet. denied) (holding that no independent cause of action exists under chapter 10, which governs sanctions for pleadings and motions filed without legal or evidentiary support or for improper purpose); *Martin v. Texas Dep't of Family & Protective Servs.*, 176 S.W.3d

7

390, 393 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (holding that chapter 105, governing frivolous claims by state agencies, allows only "motion" for sanctions and therefore no affirmative claim for relief is available). While neither of these cases address chapter 9 of the civil practice and remedies code, the underlying principles are the same. Section 9.012 allows sanctions to be imposed by the court "on its own motion" or "on the motion of any party to the action," Tex. Civ. Prac. & Rem. Code Ann. § 9.012(a), and there is no provision specifically creating an independent cause of action for sanctions. As a result, we hold that the trial court did not err in dismissing Zeifman's claim for frivolous pleadings because no independent cause of action is available under chapter 9 of the civil practice and remedies code. Zeifman's third issue is overruled.

*Fraud and Negligence*

In his fourth issue on cross-appeal, Zeifman argues that the trial court erred in dismissing his claims for fraud and negligence on the basis that Michels owed no duty to Zeifman to disclose that the suit against AISD had been filed. Zeifman takes the position that Michels owed him an informal duty to disclose this information, based on their relationship as former spouses and joint managing conservators of A.A., as well as a formal duty under section 153.076 of the family code. *See* Tex. Fam. Code Ann. § 153.076(a) (West Supp. 2008) (requiring court to "order that each conservator of a child has a duty to inform the other conservator of the child in a timely manner of significant information concerning the health, education, and welfare of the child").

Generally, no duty of disclosure arises in the absence of a confidential or fiduciary relationship. *Insurance Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998). While a fiduciary duty exists between spouses, this duty terminates when the parties are involved in

8

contested divorce proceedings and independently represented by counsel. *Solares v. Solares*, 232 S.W.3d 873, 881 (Tex. App.—Dallas 2007, no pet.); *Toles v. Toles*, 113 S.W.3d 899, 916-18 (Tex. App.—Dallas 2003, no pet.) (affirming summary judgment dismissing negligence and fraud claims because no duty existed between spouses in contested divorce proceedings where each spouse was represented by counsel); *Bass v. Bass*, 790 S.W.2d 113, 119 (Tex. App.—Fort Worth 1990, no writ). As indicated by the procedural history of this case and the related litigation, Zeifman and Michels are independently represented by counsel as adversaries in litigation affecting the parent-child relationship, which arose after contested divorce proceedings. As a result, any confidential or fiduciary relationship that existed during the parties' marriage has long since terminated.

Furthermore, Zeifman has not provided, and we have not found, any authority suggesting that section 153.076 of the family code creates a statutory duty that gives rise to tort liability. Section 153.076 merely provides that the trial court shall "order that each conservator of a child has a duty to inform the other conservator of the child in a timely manner of significant information concerning the health, education, and welfare of the child." Tex. Fam. Code Ann. § 153.076(a). Significantly, in a case involving the potential for tort liability under a different family code provision, the Texas Supreme Court held that the statute requiring witnesses of child abuse to report it to the appropriate authorities did not give rise to "a duty and standard of conduct in tort." *Perry v. S.N.*, 973 S.W.2d 301, 309 (Tex. 1998). In reaching this conclusion, the court considered such factors as the lack of a duty in common law and the fact that the required conduct—reporting child abuse—was not clearly defined by the statute. *See id.* Similarly, there is no common law cause of action for failure to disclose the information described in section 153.076(a), and the required

9

conduct is not clearly defined, given the lack of guidance on what constitutes "significant information" or when a conservator must disclose information in order for it be disclosed "in a timely manner." *See* Tex. Fam. Code Ann. § 153.076(a). In the absence of any Texas precedent for imposing tort liability based on section 153.076 of the family code, we decline to do so here, particularly in light of *Perry*. Accordingly, we hold that the trial court did not err in dismissing Zeifman's claims for fraud and negligence. Zeifman's fourth issue is overruled.

*Malicious Prosecution*

In Zeifman's fifth issue on cross-appeal, he argues that the trial court erred in dismissing his malicious prosecution claim. Michels, in her sole issue on appeal, argues that the malicious prosecution claim should have been dismissed with prejudice, rather than without prejudice. To prevail on a claim for malicious prosecution, a plaintiff must establish: (1) the institution or continuation of civil proceedings against the plaintiff; (2) by or at the insistence of the defendant; (3) malice; (4) lack of probable cause; (5) termination of the proceedings in the plaintiff's favor; and (6) special damages. *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996). Michels contends that Zeifman fails to meet three of the required elements because he was not a party to the suit for injunctive relief, the suit has not yet terminated in his favor, and he failed to show special damages. The trial court dismissed the malicious prosecution claim without prejudice on the grounds that the underlying suit has not terminated while the issue of sanctions remains pending on remand. *See Zeifman*, 229 S.W.3d at 468 (reversing trial court's order striking Zeifman's intervention and remanding for further proceedings on issue of sanctions).

10

An underlying civil claim does not terminate in favor of the plaintiff in a malicious prosecution case "until the appeals process has been exhausted." *Green*, 921 S.W.2d at 206. Furthermore, the proceedings are not terminated "until the final disposition of the appeal and *of any further proceedings that it may entail*." *Id.* at 208 (quoting Restatement (Second) of Torts § 674 cmt. j (1977)) (emphasis added). While Zeifman argues that the underlying proceedings at issue here were terminated in his favor when all matters of substantive relief were finally decided, *see Zeifman*, 229 S.W.3d at 468, the fact remains that the appeals process has not yet been exhausted because the issue of sanctions remains pending on remand and may still be appealed when a final order on sanctions is issued by the trial court.[3] Until the appeals process is complete with regard to all issues, including sanctions, the underlying suit has not yet terminated in Zeifman's favor. As a result, Zeifman's fifth issue is overruled.

Zeifman has also failed to meet the first element of a claim for malicious prosecution—"the institution or continuation of civil proceedings against the plaintiff." *Green*, 921 S.W.2d at 207. While Zeifman argues that a non-party to the underlying civil suit may bring a claim for malicious prosecution if he suffered special damages as a direct result of the underlying suit, this argument is inconsistent with the Texas Supreme Court's express statement in *Green* that a malicious prosecution plaintiff must establish "the institution or continuation of civil proceedings

---

[3] The parties concede that only the issue of sanctions remains pending. *See Zeifman v. Michels*, 229 S.W.3d 460, 468 (Tex. App.—Austin 2007, pet. denied) (reversing trial court's order striking Zeifman's intervention and remanding for further proceedings on issue of sanctions); *see also Freightliner Corp. v. Motor Vehicle Bd.*, 255 S.W.3d 356, 362 (Tex. App.—Austin 2008, pet. filed) (observing that when an appellate court remands a case on a particular issue, "the trial court is restricted to a determination of that particular issue").

against the plaintiff." *Id.* An argument similar to the one made by Zeifman was rejected in *RRR Farms, Ltd. v. American Horse Protection Association, Inc.*, 957 S.W.2d 121, 132-33 (Tex. App.—Houston [14th Dist.] 1997, pet. denied), in which our sister court, citing *Green*, "decline[d] to expand the malicious prosecution tort to include someone who was not a party to the underlying proceeding." *RRR Farms*, 957 S.W.2d at 133. The court further stated, "This holding is consistent with the purpose of the malicious prosecution tort. Fundamentally, this tort is available only to parties *who were wrongly sued* and seek to be made whole." *Id.* (emphasis added). Following this reasoning, we too decline to expand the malicious prosecution tort to an individual who was not a named party in the underlying proceeding. Therefore, Zeifman cannot meet the first element of a claim for malicious prosecution as a matter of law, and his claim must be dismissed with prejudice.[4] We sustain Michels's issue on appeal.

*Abuse of Process*

Zeifman, in his sixth issue on cross-appeal, argues that the trial court erred in dismissing his claim for abuse of process. "Abuse of process is the malicious use or misapplication of process in order to accomplish an ulterior purpose." *Hunt v. Baldwin*, 68 S.W.3d 117, 129 (Tex. App.—Houston [14th Dist.] 2001, no pet.). However, if the process is used for the purpose for which it is intended, no abuse of process has occurred, "even though accomplished by an ulterior motive." *Id.* at 130. A claim based on the filing and maintaining of a lawsuit cannot constitute abuse of process, because abuse of process refers to "the improper use of the process after it has been

---

[4] In light of our holding, we need not determine whether Zeifman has alleged special damages sufficient to support a claim for malicious prosecution.

12

issued." *Klein & Assocs. Political Relations v. Port Arthur Indep. Sch. Dist.*, 92 S.W.3d 889, 898 (Tex. App.—Beaumont 2002, pet. denied). "To constitute abuse of process, the process must have been used to accomplish an end which is beyond the purview of the process and compels a party to do a collateral thing which he could not be compelled to do." *Bossin v. Towber*, 894 S.W.2d 25, 33 (Tex. App.—Houston [14th Dist.] 1994, no pet.). This element is not present in the case at bar, in which process was used to inform AISD that Michels had filed a lawsuit seeking to prevent AISD from enrolling A.A. in Bryker Woods and had obtained a temporary restraining order to that effect. AISD was not compelled to take any collateral action, but rather to participate in the litigation proceedings, which it did by negotiating the Rule 11 agreement. Because the process in this case was used for the purpose for which it was intended, Zeifman's abuse-of-process claim fails as a matter of law. We overrule Zeifman's sixth issue.

*Conspiracy and Fraud by Nondisclosure*

In Zeifman's first issue on cross-appeal, he argues that the trial court erred in granting summary judgment on his two later-pleaded claims of conspiracy and fraud by nondisclosure, because these claims were not addressed in the motions for summary judgment.

As a general rule, summary judgment may not be granted on causes of action that were not addressed in the summary judgment motions. *Chessher v. Southwestern Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983); *see also Rotating Servs. Indus., Inc. v. Harris*, 245 S.W.3d 476, 487 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("A defendant who does not amend or supplement its motion for summary judgment to address claims asserted in a plaintiff's amended pleading is generally not entitled to a summary judgment on the plaintiff's entire case."). However,

13

an exception to this rule applies to cases where the motion for summary judgment is sufficiently broad to encompass the later-pleaded claims or where a defendant conclusively disproves an element common among pleaded causes of action. *Owens v. McLeroy, Litzler, Rutherford, Bauer & Friday, P.C.*, 235 S.W.3d 388, 391 (Tex. App.—Texarkana 2007, no pet.). "In a nod to reality, summary judgment may be properly granted on later-pleaded causes of action if the grounds actually asserted show that the plaintiff could not recover on the later-pleaded cause of action." *Id.*

As previously discussed, the litigation privilege, which was raised by the Attorney Appellees in their motions for summary judgment, bars all claims against the Attorney Appellees arising from the actions taken in the context of representing Michels in litigation. Because Zeifman's claims of conspiracy and fraud by nondisclosure are based on the same conduct as his five original claims, the litigation privilege necessarily bars these claims as well.[5] The Attorney Appellees' motions for summary judgment clearly raise the litigation privilege, and accordingly establish that Zeifman cannot recover on his later-pleaded causes of action.

With regard to Zeifman's claims against Michels, Michels's motion for summary judgment conclusively establishes that Zeifman cannot recover on his claims for conspiracy or fraud by nondisclosure. Zeifman's fraud by nondisclosure claim, like his general fraud claim, is based on his argument that Michels owed him both an informal duty and a statutory duty under the family code to inform him of the suit against AISD for injunctive relief. As previously discussed, Michels's motion for summary judgment negated an element of Zeifman's fraud claim—the existence of a duty to disclose. As a result, Michels's motion similarly negates this

---

[5] The statement of facts in Zeifman's amended petition is identical to the one found in his original petition.

14

essential element of Zeifman's fraud by nondisclosure claim. *See Patterson v. McMickle*, 191 S.W.3d 819, 826 (Tex. App.—Fort Worth 2006, no pet.) ("The failure to disclose information does not constitute fraud in the absence of a duty to disclose.").

Civil conspiracy is "a derivative tort," which depends on a defendant's participation "in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). Where the plaintiff's underlying tort claim fails, the conspiracy claims fails as well. *See Chu*, 249 S.W.3d at 447 (holding that where plaintiff's tort claim fails as a matter of law, "she has no conspiracy claim against [the defendant] for conspiring in such a tort"); *White*, 32 S.W.3d at 276 ("[Plaintiff's] inability to articulate an actionable underlying tort claim is fatal to his conspiracy allegations."). As discussed above, the trial court properly granted Michels's motion for summary judgment on Zeifman's underlying tort claims. In light of our holding that Zeifman cannot recover on his underlying tort claims, it necessarily follows that he cannot recover on his conspiracy claim. Further, we hold that Michels's motion for summary judgment, which established that Zeifman's underlying tort claims fail as a matter of law, was sufficient to encompass his later-pleaded conspiracy claim as well. Zeifman's first issue is overruled.

*Opportunity to Replead*

In his seventh issue, Zeifman argues in the alternative that the trial court erred in dismissing his claims without giving him an opportunity to replead. A trial court need not give a plaintiff the opportunity to amend if "the petition affirmatively demonstrates that no cause of action exists or that plaintiff's recovery is barred." *Peek v. Equipment Serv. Co.*, 779 S.W.2d 802, 805

15

(Tex. 1989). As previously discussed, any cause of action against the Attorney Appellees in this case is barred as a matter of law by the litigation privilege. Furthermore, we have concluded that no cause of action exists for frivolous filing under chapter 9 of the civil practice and remedies code, that Zeifman may not recover on claims for abuse of process or malicious prosecution as a matter of law, and that Michels did not owe Zeifman a duty to disclose, and therefore is not subject to tort liability for any nondisclosure. Summary judgment in this case was granted, not because Zeifman's petition failed to state a cause of action, but because it affirmatively demonstrated that all of his claims fail as a matter of law. *See Bradt*, 892 S.W.2d at 66 ("Summary judgment is proper where the plaintiff's allegations cannot constitute a cause of action as a matter of law."). As a result, we hold that Zeifman is not entitled to an opportunity to replead. Zeifman's seventh issue is overruled.

## CONCLUSION

We hold that the trial court did not err in granting summary judgment dismissing Zeifman's claims, but the claim of malicious prosecution should have been dismissed with prejudice. Accordingly, we reverse the dismissal of the malicious prosecution claim without prejudice and render judgment that it be dismissed with prejudice. The remainder of the trial court's order is affirmed.

_____

Diane M. Henson, Justice

Before Justices Patterson, Waldrop and Henson

Affirmed in Part; Reversed and Rendered in Part

Filed:   February 12, 2009

16